IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CECELIA V. WILKINSON**                                                      **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 1:15-cv-418-HSO-MTP**

**CAROLYN W. COLVIN**                                                **DEFENDANT**

**REPORT AND RECOMMENDATIONS**

Plaintiff Cecelia A. Wilkinson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits. The parties have briefed the issues in this matter in accordance with the Court's Scheduling Order [3], and the matter is now ripe for decision. After reviewing the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED.

**PROCEDURAL HISTORY**

On April 16, 2013, Plaintiff applied for disability insurance benefits, alleging disability beginning on September 12, 2012, due to dehydrated, bulging, and arthritic spinal discs. (Administrative Record [10] at 147-51, 170.) Plaintiff's claim was denied initially and upon reconsideration. ([10] at 76-77.) Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), and on July 10, 2014, an ALJ held a hearing, during which Plaintiff and a vocational expert testified. Thereafter, the ALJ issued a decision finding that Plaintiff was not disabled. ([10] at 22-33, 38-68.) Plaintiff appealed the ALJ's decision to the Appeals Counsel, and on November 4, 2015, it denied Plaintiff's request of review, rendering the ALJ's decision

1

the final decision of the Commissioner. ([10] at 4-6, 16.)  Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## SUMMARY OF THE FACTUAL AND MEDICAL HISTORY

Plaintiff was fifty years old at the time of the hearing before the ALJ.  She has a high school education, and has past work experience in the casino security industry, as a slot machine technician, and as a restaurant cook. ([10] at 73, 31-32.)  According to Plaintiff, she has a history of mechanical back pain and lumbar disc displacement.

Plaintiff informed her medical providers that she had experienced back pain following a motorcycle accident in 1984. ([10] at 299.)  On October 27, 2011, a physical therapist noted that Plaintiff had painful and limited range of motion and poor lumbar stabilization, but an MRI taken in September of 2012 showed only mild disc disease in her lower lumbar spine and did not reveal any significant spinal canal stenosis. ([10] at 323; 408.)

On October 4, 2012, an orthopedic specialist, Dr. John Semon, examined Plaintiff and noted that she walks with a normal gait, stands erect, and has a full range of motion in her lumbar spine with only mild pain at the extremes of motion.  According to Dr. Semon, an MRI of the lumbar spine showed mild bulging.  Additionally, Plaintiff's straight leg raising test was "questionably positive," indicating a possible disc herneation.  Dr. Semon concluded that Plaintiff did not need any type of surgery.  Instead, he recommended she see a physical therapist. ([10] at 317-18.)

On December 21, 2012, a radiograph revealed narrowing of Plaintiff's C6-C7 disc space with marginal bony spur formation, which is consistent with degenerative cervical disc disease. The next day, however, Plaintiff's physical therapist noted that she had fair rehabilitation

potential. ([10] at 272, 299.)  On March 12, 2013, Dr. Selika Sweet noted that Plaintiff had chronic back pain and had been prescribed a back brace. ([10] at 347-48.)  However, eight days later, a neurosurgeon, Dr. Terry Smith, reviewed Plaintiff's MRI and saw "little out of the ordinary."  Dr. Smith stated that he would call it normal except for darkening of the L5-S1 disc. ([10] at 233.)

On June 9, 2013, a state agency medical consultant, Dr. Thomas Tapley, determined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, sit for approximately six hours in an eight-hour work day, and stand and/or walk for approximately six hours in an eight-hour workday.  Later that month, another state agency medical consultant, Dr. Robert Culpepper, agreed with Dr. Tapley's findings. ([10] at 72-73, 81.)

On July 2, 2013, Plaintiff again saw her neurosurgeon, Dr. Smith, and informed him that she had pain in her left buttock "like stabbing a piece of metal into it," but she also stated that the "pain is livable since she has curtailed most activities."  Plaintiff informed Dr. Smith that she wanted to try surgery, and on August 12, 2013, Dr. Smith performed a lumbar fusion procedure on Plaintiff.  A radiograph taken after the surgery showed "normal anatomic alignment."  On August 28, 2013, Plaintiff reported that she was "very happy" and had no back pain. On October 23, 2013, Dr. Smith cleared Plaintiff to return to work. ([10] at 604-05, 609-13, 615.)

On December 4, 2013, Plaintiff informed Dr. Smith that she had fallen twice since the surgery and, as a result, had begun to experience pain in her lower back.  Dr. Smith stated that Plaintiff "has likely not harmed herself with the fall" and her pain could be improved with physical therapy.  Plaintiff began physical therapy and on January 21, 2014, informed her therapist that she was "overall doing great since the surgery," but continues to have stiffness and

3

pain in her lower back in the mornings, when rolling side to side, and when standing after sitting for a prolonged period of time. On February 4, 2014, Dr. Smith noted that Plaintiff was "feeling great" and was able to ride an exercise bike and perform squats. ([10] at 619, 622, 648.)

On March 3, 2014, Plaintiff reported to her physical therapist that she had been better until a recent incident where her sister "hit her in the low back on accident," causing an increase in lower back pain, numbness, tingling, and weakness. The therapist, however, noted that Plaintiff had a good rehabilitation potential, and the therapist's stated goal was to have Plaintiff return to work with minimum to no pain. ([10] at 643-45.)

On July 23, 2014, Plaintiff informed her nurse that, as she rolled over in bed, she heard a pop and crack and experienced pain in her lower back and hips. On August 8, 2014, a nurse practitioner noted that Plaintiff has some problems in her back but was tolerating it well. In October, 2014, Plaintiff again reported that she hurt her back by hyperextending it while playing darts. Plaintiff stated that it was "more annoying than anything." A physician assistant provided Plaintiff a pain medication and indicated that she might increase her muscle relaxant if necessary. ([10] at 697, 701-05, 686, 693-94.)

**BURDEN OF PROOF**

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. An individual who does not have a 'severe impairment' will not be found to be disabled.
>
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

862 F.2d 471, 475 (5th Cir. 1988) (citations and footnotes omitted). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Id*.

### ADMINISTRATIVE LAW JUDGE'S ANALYSIS

As previously mentioned, the ALJ held a hearing in this matter and, after utilizing the five-step sequential analysis described above, rendered a decision that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 12, 2012, the alleged disability onset date.[1] At step two, the ALJ found that Plaintiff had two severe impairments: disorders of the neck and back and osteoporosis. At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([10] at 24-27.)

---

[1] The ALJ noted that Plaintiff worked after the alleged onset date but held that her work activity did not rise to the level of substantial gainful employment as Plaintiff's earnings were modest. ([10] at 24-25.)

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[2] to "lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; can stand and/or walk six-hours in an eight-hour workday; and can sit for six-hours in an eight-hour workday."  The ALJ went on to determine at step four that Plaintiff could not perform any past relevant work, but found at step five that there existed jobs in significant numbers in the national economy that she could perform.  Accordingly, the ALJ found that Plaintiff was not disabled. ([10] at 28-33.)

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).   To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established."  *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990).

---

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. 419.945.

A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475. If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff puts forth three arguments in her Brief [11]: (1) the ALJ erred in finding that Plaintiff can perform light work when assessing her RFC by not providing any rationale or reference to supporting evidence that is not inconsistent with other evidence of record as required by Social Security Rule 96-8; (2) the ALJ erred in assessing Plaintiff's RFC because he failed to fully develop the record by ordering a consultive examination to measure Plaintiff's capacity after her back surgery in violation of 20 C.F.R. 404.1529(b); and (3) the ALJ erred in failing to develop the claim by not ordering an orthopedic consultative examination to set functional limitations in violation of 20 C.F.R. 404.1529(b).

### *The Evidence Supporting the ALJ's Assessment of Plaintiff's RFC*

Plaintiff makes three arguments against the ALJ's assessment of Plaintiff's RFC: (1) that the ALJ failed to provide reasons for rejecting the evidence that supports a finding that Plaintiff is disabled; (2) that the ALJ's determination is not supported by substantial evidence; and (3) that the ALJ failed to give proper weight to the opinion evidence.

Social Security Rule 96-8 requires an ALJ to discuss a claimant's ability to perform

sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. *See* SSR 96-8p. An ALJ, however, is not required to discuss each piece of evidence in the medical records. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (ruling that the ALJ does not need to specifically address all of the evidence that he rejected). The record demonstrates that the ALJ complied with SSR 96-8 by providing a narrative discussion of the evidence supporting his determination and resolving inconsistencies in the evidence as a whole. ([10] at 28-31.) Additionally, the record demonstrates that the ALJ's determination is supported by substantial evidence.

The ALJ discussed the fact that multiple MRIs of Plaintiff's spine revealed mild disc disease and mild bulging of her lumbar spine. The ALJ pointed out that Dr. John Semon concluded that Plaintiff did not need any type of surgery and that Dr. Terry Smith saw "little out of the ordinary." However, the ALJ also mentioned that Plaintiff underwent a lumbar fusion procedure. The ALJ pointed out that, following the procedure, radiographs showed normal anatomic alignment of Plaintiff's spine and Dr. Smith found Plaintiff was making significant improvement with little pain and could return to work. ([10] at 29.)

The ALJ also discussed Plaintiff's periods of increased pain which were caused by her falls and the accident with her sister, but noted that Plaintiff appeared to fully recover from these setbacks. The ALJ considered Plaintiff's subjective complaints of pain but concluded that the surgery improved Plaintiff's pain. The ALJ also considered the opinions of the state agency medical consultants, who found that Plaintiff was not disabled. ([10] at 29-31.)

Additionally, the ALJ discussed Plaintiff's activities of daily living, which included preparing meals, working in her garden, fishing once or twice a week, shopping, loading the

dishwasher, feeding her pets, doing laundry, driving a car, paying bills, and throwing darts. The ALJ noted that, although the work did not rise to the level of substantial gainful employment, Plaintiff performed work after her alleged disability onset date and noted that Plaintiff consistently indicated that she was looking for employment after the alleged onset date. ([10] at 30.)

The ALJ provided a thorough discussion of Plaintiff's medical records and resolved the inconsistencies in the evidence. Nothing about the ALJ's findings or the record suggests that the ALJ failed to properly considered the evidence. Furthermore, Plaintiff had the burden to demonstrate to the Court that no substantial evidence supports the ALJ's decision, and in the opinion of the undersigned, Plaintiff has not met that burden. This Court does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner, and Plaintiff has failed to show that no credible evidentiary choices or medical findings support the ALJ's decision. *Selders*, 914 F.2d at 617; *Boyd*, 239 F.3d at 704.

Plaintiff also argues that the ALJ gave too little weight to the opinions of her treating physicians and too much weight to the opinions of consultive examiners. The Court "may not reweigh the evidence or substitute its judgment for the [ALJ's]." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Court must simply determine if substantial evidence exists to support the ALJ's findings.

A treating physician's opinions should be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)) (alteration in original).

However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id*. (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 456 (citation omitted).

Plaintiff argues that the ALJ ignored the evidence from Plaintiff's treating sources and instead based his decision on the state agency consultants' opinions. As previously discussed, however, the ALJ's opinion demonstrates that he carefully considered the medical records from Plaintiff's treating sources. The ALJ noted that Plaintiff's treating medical professionals found that she had mild disc disease and mild bulging of her lumbar spine. The ALJ also noted that Plaintiff underwent a lumbar fusion procedure and received follow-up treatment after her surgery. The ALJ discussed the treating physicians' treatments and opinions, including Dr. Smith's opinion that Plaintiff could return to work following the surgery. ([10] at 29.)

Plaintiff points to no medical opinion in the record which explicitly states that Plaintiff's impairments rendered her unable to perform substantial gainful activity, and the record demonstrates that the ALJ's decision was based on Plaintiff's medical records as a whole, including records from her treating sources. In summary, the record demonstrates that the ALJ properly assessed Plaintiff's RFC and substantial evidence supports the ALJ's decision regarding Plaintiff's RFC.

*Consultative Examination*

Plaintiff also argues that the ALJ erred by failing to order a consultive examination to

measure Plaintiff's capacity after her back surgery and by failing to order an orthopedic consultative examination to set functional limitations. It is plaintiff's responsibility to offer evidence of her claimed disability, and if she does not provide sufficient medical or other evidence, a decision must be made based on the information available. *See* 20 C.F.R. 404.1516. However, "[t]he ALJ has the discretion to order a consultative examination." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). A consultative examination at the government's expense is only required when "the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original).

The record contains sufficient evidence regarding Plaintiff's capacity after her back surgery and sufficient evidence regarding her functional limitations for the ALJ to make a disability decision. The ALJ discussed the physicians' treatment and opinions, including the findings of Dr. Semon, an orthopedic specialist. ([10] at 29, 396-97.) The ALJ specifically discussed Plaintiff's treatment and condition following her lumbar fusion procedure. The evidence shows that the surgery was successful and that the surgeon found Plaintiff had made significant improvement with little pain and could return to work. ([10] at 604-05, 609-13.) Plaintiff was feeling great and was able to ride an exercise bike and perform squats after the surgery. The evidence also shows that Plaintiff was able to overcome setbacks, such as the increased pain caused by her falls. ([10] at 619, 622, 648.) Additionally, Plaintiff described her latest setback as "more annoying than anything." ([10] at 693.) The record does not suggest that additional consultative examinations were necessary in this case, and the decision should not be reversed on this ground.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and applies the correct legal standards. Therefore, the undersigned recommends that the Commissioner's final decision be AFFIRMED and this action be DISMISSED.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the Judge, the Magistrate Judge and the opposing party. The District Judge at the time may accept, reject, or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 25th day of October, 2016.

s/ Michael T. Parker
United States Magistrate Judge